UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TEAMSTERS LOCAL UNION NO. 1199,

    Plaintiff,

v.

COCA-COLA CONSOLIDATED, INC.,

    Defendant.

Case No. 1:19-cv-0732
Judge Edmund A. Sargus, Jr.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court on Plaintiff's, Teamsters Local Union No. 1199 ("Plaintiff"), Petition to Compel Arbitration (ECF No. 19) and Defendant's Coca-Cola Consolidated Incorporated ("Defendant"), Motion to Dismiss Plaintiff's Complaint (ECF No. 16) and Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 22). For the reasons stated herein, Plaintiff's Petition to Compel Arbitration (ECF No. 19) is **GRANTED**, Defendant's Motion to Dismiss Plaintiff's Complaint is **DENIED as MOOT**, and Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 22) is **DENIED**. The action is **DISMISSED**.

## I.    BACKGROUND

### A. Factual Background

Plaintiff is the duly recognized and exclusive bargaining agent for certain employees of Defendant. (Am. Compl. ¶ 1, ECF No. 19.) Since 2016, Defendant has been engaged in the bottling and distributing of soft drinks and other non-alcoholic beverages in a facility located at 5100 Duck Creek Road, Cincinnati, Ohio (the "Duck Creek Facility"). (*Id.* at ¶ 2.) The Duck Creek Facility, until recently, has housed both production and a warehouse. (*Id.* at ¶ 10.)

Defendant was previously known as Coca-Cola Refreshments USA, Inc., and Coca-Cola

Enterprises. (*Id.* at ¶ 8.) Prior to Defendant operating out of the Duck Creek Facility, a series of other companies licensed by Coca-Cola to distribute their products ran the Duck Creek Facility. These other companies also operated out of different facilities. (*Id.*) Plaintiff, or a predecessor union, has been the duly authorized bargaining representative for production in the Duck Creek Facility, and the preceding facilities, since at least 1965. (*Id.*)

At all times relevant to this action Plaintiff and Defendant were parties to a collective bargaining agreement ("CBA") effective from June 1, 2017 to May 31, 2121. (*Id.* ¶ 6.) In the past, each time a new company took over operating the Duck Creek Facility the employees Plaintiff represents became employees of the new entity. (*Id.* at ¶ 9.) The same occurred in the preceding facilities. (*Id.*) Further, at each transition, the CBA was adopted by the new operator. (*Id.*)

The CBA includes provisions for wages, benefits, bidding on jobs based on seniority, changing positions, grievances and more. (*Id.* at ¶ 7.) The CBA also contains a "recognition clause" which states "[t]he Company recognizes the Union as its employees' sole collective bargaining unit agent with respect to the hours of work, wages, and other conditions of employment for all employees employed at its 5100 Duck Creek Road Location . . . " (Compl., Ex. A at 2, ECF 1-3, hereinafter "CBA".) This clause has been amended overtime to cover the work and employees at the location the licensed bottler was operating at the time. (Am. Compl. at ¶ 11.) The Duck Creek Facility has been the only location where the employer has conducted any warehouse operations since at least 1991. (*Id.*) The CBA recognition clause has, thus, referred only to Duck Creek Road since that time. (*Id.*)

The CBA also contains an article titled "Grievance and Arbitration Procedure." (CBA at 6–7.) This article explains that the grievance process begins by filing a grievance with the department manager and culminates in arbitration. (*Id.*) A grievance is defined as "a dispute

2

between the Company and an employee or employees concerning the interpretation or application of [the CBA] arising from an alleged violation of the terms of this agreement." (*Id.* at 6.)

In June of 2018, Defendant announced to its employees that it planned to relocate the warehouse operations from the Duck Creek Facility to Erlanger, Kentucky (the "Erlanger Facility.") (*Id.* at ¶ 13.) The Erlanger Facility is approximately sixteen miles south of the Duck Creek Facility. (*Id.*) Defendant stated that the production operations would remain at the Duck Creek Facility. (*Id.*) On July 26, 2019, Defendant told Plaintiff's representatives that at the Erlanger Facility: it did not consider the CBA to apply, the employees had no contractual right to bid for jobs, the wages would be lower, insurance would be offered at a higher cost with lower benefits, and other changes would occur. (*Id.* at ¶ 18.)

Plaintiff filed grievances with the department manager on July 24 and 25, 2019, on behalf of its bargaining members, protesting Defendant's refusal to apply the CBA to the Erlanger Facility. (*Id.* at ¶ 20.) Defendant denied the grievances. (*Id.* at ¶ 22.) Plaintiff sent notices under the CBA to move the grievances to arbitration. (*Id.* at ¶ 20.) The parties received a list of arbitrators, but Defendant unequivocally refused to arbitrate the grievances maintaining they were not arbitrable. (*Id.* a ¶ 22.)

**B. Procedural Background**

On September 3, 2019, Plaintiff filed for emergency injunctive relief asking the Court to require Defendant to recognize the CBA at the Erlanger Facility or delay the move to the Erlanger Facility until the grievances could be arbitrated. (ECF No. 2.) On September 24, 2019, the Court denied the injunctive relief (ECF No. 14). Defendant moved its warehouse operations to the Erlanger Facility on September 30, 2019. (*Id.* at ¶ 26.)

On October 3, 2019, Defendant filed a Motion to Dismiss or in the alternative a Motion for Summary Judgment on Plaintiff's request for injunctive relief. (Def's Mot. Dismiss Pl.'s Compl. or Alternative Mot. Summ. J., ECF No. 16.) On November 6, 2019, Plaintiff voluntarily dismissed the claim for injunctive relief and thus, this motion is moot. (Notice Pl.'s Voluntary Partial Dismissal, ECF No. 20.)

On November 22, 2019, Plaintiff amended its Complaint, adding an additional count which petitioned the Court to compel arbitration under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* (Pl.'s Am. Compl. ¶ 32.)

Finally, on November 22, 2019, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint, or in the alternative a Motion for Summary Judgment. (Def.'s Mot. Dismiss Lack Jurisdiction or Mot. Summ. J., ECF No. 22.) Defendant maintains the Amended Complaint should be dismissed because the Court lacks subject-matter jurisdiction, the grievance is not substantively arbitrable, and the Amended Complaint fails to state a claim upon which relief can be granted. (*Id.* at 1.)

## II. JURISDICTION

Section 301 of the LMRA vests the federal courts with jurisdiction to examine "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. §185(a). Matters of contract interpretation remain in the federal court's jurisdiction, even if there are representational issues involved. *Paper Allied-Indus., Chem. & Energy Workers Int'l Union, Local 5-0550 v. Air Prods & Chems., Inc.*, 300 F.3d 667, 672–673 (6th Cir. 2002) ("Moreover, the Supreme Court has held that even if the contract dispute

involves a representational question, and even though an alternative remedy before the [NLRB] is available, federal courts have jurisdiction to enforce an arbitration clause.").

For example, in *Paper, Allied-Industrial Chemical and Energy Workers International Union*, the employer opened up a new power plant adjacent to the old plant. *Id.* at 669. The employer contended this was a distinct operating plant and not subject to the collective bargaining agreement in force at the old plant. *Id.* The employer refused to enforce seniority rights at the new plant. *Id.* The union brought suit and the employer argued that the issue of whether the union's representation should be extended to the new plant was representational, and thus, under exclusive jurisdiction with the NLRB. *Id.* at 671. The Sixth Circuit found the case was "a matter primarily of contract interpretation, while potentially implicating representational issues." *Id.* at 672. Thus, the Sixth Circuit held "where neither [the union nor the employer] has sought to invoke the powers of the NLRB, and the disputed issue is of a contractual nature, a federal court may properly exercise its jurisdiction over the matter." *Id.*

The instant case is factually similar to *Paper, Allied-Industrial*. Both cases involve a company opening up a new facility and contending employees moving to the new facility do not get to exercise the rights agreed to in the collective bargaining agreement. *Paper, Allied-Indus.*, 300 F.3d at 669. In *Paper, Allied-Industrial*, there were no charges relating to representation pending before the NLRB. *Id.* at 672. The same is true here.[1] *Id.* at 672. The employer in *Paper,*

---

[1] There is a charge before the NLRB relating to whether Defendant committed unfair labor practices. (Def.'s Mem. Supp. Mot. Dismiss at 1, ECF 22.) Defendant, relying on *Int'l Bhd Boilermakers v. Olympic Plating Indus., Inc.*, 870 F.2d 1085 (6th Cir. 1989), contends this absolves the Court of jurisdiction. This argument is unpersuasive because: (1) the claim in this case before the NLRB does not involve issues of representation like in *Olympic Plating*; and (2) this case does not involve two unions competing for representation and instead involves the contractual issue of whether the Defendant's employees are entitled to the rights provided by the CBA at the Erlanger Facility. *See Paper, Allied-Industrial*, 300 F.3d at 675–76 (distinguishing *Olympic Plating* by stating that "[t]he instance case . . . does not involve a determination of which union should represent [the defendant's] employees; there are no competing unions. Rather, the question is whether [the defendant's] employees, undeniably governed by the existing collective bargaining agreement, are entitled to jobs at the new power plant.").

*Allied-Industrial*, argued that the court had no jurisdiction to compel arbitration. *Id.* Defendant argues the same here. Thus, here, as in *Paper Allied-Industrial*, while representational issues may be implicated, the dispute is contractual in nature and the court has jurisdiction.[2]

Defendant argues that this conclusion requires the Court to decide an initial representational matter that is within the jurisdiction of the NLRB. (Def.'s Mem. Supp. Mot. Dismiss at 16.) Defendant cites cases such as *Laborers' District Council of Ohio v. Roadsafe Traffic Systems, Incorporated*, No. 17-cv-99, 2018 WL 1327210 (S.D. Ohio Mar. 14, 2018) where the question was whether there was a valid collective bargaining agreement between the parties. Defendant's argument is unpersuasive because the parties here do not dispute that Plaintiff and Defendant entered into a valid collective bargaining agreement. The question is not whether Plaintiff is the union representing Defendant's employees at Duck Creek Facility. The question is whether these employees have the same rights under the CBA at the Erlanger Facility as at the Duck Creek Facility, and thus, is one primarily of contract interpretation, not representation.

## III. ARBITRATION

Although the FAA "does not apply to collective bargaining agreements . . . federal courts have looked to it for guidance in labor cases brought under § 301 of the LMRA." *Int'l Bhd Teamsters, Local 519 v. United Parcel Serv., Inc.*, 335 F.3d 497, 503 n.2 (6th Cir. 2003); *see also Am. Fed'n Television & Radio Artists v. WJBK-TV*, 164 F.3d 1004, 1009 (6th Cir. 1999) ("[T]he Supreme Court in *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987), expressly recognized that federal courts may look to the FAA for guidance in labor arbitration cases.").

---

[2] Defendant also argues the matter is representational because Plaintiff "asks this Court for an order compelling Defendant [to] expand the bargaining unit and apply the CBA to the Erlanger [F]acility and its employees." (Def.'s Mem. Supp. Mot. Dismiss at 12.) This argument is not compelling because Plaintiff voluntarily dismissed the count which asked the Court for this injunctive relief. (Pl.'s Voluntary Partial Dismissal.)

6

The FAA provides that "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2006). Congress' primary concern in passing the FAA "was to enforce private agreements into which parties had entered, and that concern requires [courts to] rigorously enforce agreements to arbitrate ... " *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Thus, "[i]n deciding the arbitrability of [a] dispute, [courts] begin with the presumption that the national labor policy favors arbitration." *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007). The Supreme Court instructed that "[i]n absence of any express provision excluding the particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where ... the arbitration clause is quite broad." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–85 (1960). "Doubts should be resolved in favor of coverage." *United States Steelworkers of Am. v. Warrior & Gulf Navigation*, 363 U.S. 574, 583 (1960).

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

### A. Valid Agreement to Arbitrate

The parties agree that they contracted to arbitrate grievances which are "disputes[s] between the Company and an employee or employees concerning the interpretation or application of this agreement arising from an alleged violation of the terms of this agreement." (CBA at 6;

Am. Compl. ¶¶ 6–7; Def.'s Mem. Supp. Mot. Dismiss at 3.) The parties disagree, however, on whether the instant dispute, whether employees moving to the Erlanger Facility can exercise the rights contained in the CBA, is within the substantive scope of this agreement.

### B. Specific Dispute Falls within the Substantive Scope of the Agreement

In determining whether a specific dispute falls within the substantive scope of the agreement between the parties, the Supreme Court and the Sixth Circuit have held that the presumption of arbitrability is particularly applicable when the arbitration clause is broad, such as when it provides for arbitration of "any differences arising with respect to the interpretation of this contract and the performances of any obligation hereunder . . ." *AT&T v. Commc'ns Workers of Am. et al.*, 475 U.S. 643, 650 (1986); *see also int'l Ass'n of Machinists & Aerospace Workers v. ISP Chems., Inc.*, 261 F. App'x 841, 843, 845 (6th Cir. 2008) (applying this presumption when the arbitration clause read "any difference of opinion or dispute between representatives of the Company and Union representatives regarding interpretation or application of any provision . . ."); *Cleveland Elec., Illuminating Co. v. Util. Workers Union*, 440 F.3d 809, 814 (6th Cir. 2006) (applying this presumption when the arbitration clause read "any disagreement concerning the interpretation or application of this [a]greement.").

Plaintiff contends the dispute in the instant case is within the scope of the agreement because numerous provisions of the CBA have been violated and thus, this is "a dispute between the Company and an employee or employees concerning the interpretation or application of [the CBA] arising from an *alleged violation* of the terms of this agreement." (CBA at 6.) (emphasis added).

The Court finds the dispute over whether the CBA applies to the Erlanger Location is a dispute between the Company and its employees concerning the application of the CBA that arose

8

from an alleged violation of the CBA by Defendant. It fits into the definition of a grievance in the CBA and thus is within the substantive scope of the agreement. The Defendant's counterarguments are not persuasive because they do not provide forceful evidence of a purpose to exclude the claim from arbitration.

1. **The CBA's Silence as to New Facilities & Recognition Clause Listing the Duck Creek Facility**

Defendant argues that the fact the CBA does not specifically provide that the "CBA will apply to newly-established or after-acquired locations" coupled with the recognition clause listing the Duck Creek Facility, compel the conclusion that the grievance at issue is not within the scope of the agreement. (Def.'s Mem. Supp. Mot. to Dismiss at 17–18.)

In interpreting a collective bargaining agreement "the court is entitled to look to the four corners of the [c]ollective [b]argaining [a]greement, *and beyond.*" *Int'l Union, United Auto., Aerospace, etc. v. ACME Precision Prods., Inc.*, 521 F. Supp. 1358, 1361 (E.D. Mich. 1981). Federal courts are "not limited to looking at the arbitration clause itself." (*Id.*). For example, our sister court in *American Ship Building Company* was faced with determining whether a Union's members concerted refusal to work overtime constituted a "strike or concerted stoppage of work" within the meaning of the parties collective bargaining agreement. *Am. Ship Bldg. Co. v. Bhd. of Boilermakers*, 495 F. Supp. 491, 492 (N.D. Ohio 1978). The court looked to the parties' past practices to determine whether the union's membership had traditionally complied with the company's request for work. *Id.* at 493–94. The Court found they had. (*Id.*)

Similarly, arbitrators use parties' past practices to interpret collective bargaining agreements. For example, in *Michigan Family Resources, Inc.*, the arbitrator sought to determine whether the collective bargaining agreement required parity in cost of living payment increases to union employees. *Mich. Family Res'. v. Serv. Emps. Int'll Union Local 517*, 475 F.3d 746, 749

(6th Cir. 2006). The agreement addressed some payments, such as those from federal funding sources, but not those from the employer. *Id.* at 749. The arbitrator relied on the employer's past practices of granting identical cost of living increases to all employees and awarded the cost of living increases to the union members. *Id.* at 750. The Sixth Circuit affirmed the award, finding the arbitrator had "[i]n the face of contractual silence . . . did what all adjudicators do under the circumstances, looked for other indicators of meaning." *Id.* at 755. Further, the court rejected the argument that the arbitrator had exceeded his authority due to a contractual provision preventing the arbitrator from changing, altering, amending, or deviating from the terms of the agreement in any respect. *Id.* at 756; *see also Titan Tire Corp. v. United Steelworkers of Am.*, 656 F.3d 368, 373–74 (6th Cir. 2011) (affirming the arbitrator's decision which considered evidence of past practices and bargaining between the parties).

Here, examination of past practices does not provide forceful evidence of a purpose to exclude a claim of whether the CBA applies to a new facility from arbitration. Instead, this examination further supports that this grievance is within the substantive scope of the agreement.

In the past, the CBA has applied at many different locations and has periodically been amended to include new locations. Starting in 1965 Plaintiff, or a predecessor union, has represented the production, maintenance and warehouse employees of each successive bottler/distributor in the Cincinnati area. (Am. Compl. ¶ 8.) The current CBA was agreed upon in May of 2017 when the earlier contract expired. *Id.* The CBA contains a recognition clause describing those employees covered as those at the Duck Creek Facility. (*Id.* at ¶ 9.) In the past this recognition clause has been periodically amended to cover the employees at whatever locations the employer was operating at the time. (*Id.*)

10

For example, the CBA in effect from March of 1971 to February of 1974 had a recognition clause stating the agreement covered those employees at 1507 Dana Avenue, Cincinnati, Ohio; and at a warehouse in Covington, Kentucky. (*Id.* at ¶ 11.) Sometime before 1990 the then-licensed bottler closed the Cincinnati operation and moved it to Duck Creek Road. (*Id.* at ¶ 12.) Thus, the CBA then in effect from March of 1982 to February of 1985 had a recognition clause which added the 5100 Duck Creek location. (*Id.*) Since this date, the recognition clause has only referred to Duck Creek, and this has been the only location where the employer conducted any warehouse operations. (*Id.*)

Examination of these past practices provides evidence that a dispute about whether the CBA applies to a particular location is a grievance as defined by the CBA for it is a dispute about an interpretation of the agreement, namely where the agreement applies. The Court does not find that the CBA does or does not apply to the Erlanger Facility. The Court finds only that both the face of the CBA and the parties' past practices shows this dispute is within the substantive scope of the agreement and thus, should proceed to arbitration for resolution on the merits.

### 2. The CBA's Management Clause

Defendant argues that the Management Clause, giving Defendant the exclusive right to transfer work to other locations and determine the services performed by the company, makes the issue at hand not within the substantive scope of the agreement. (Def.'s Mem. Supp. Mot to Dismiss at 19.) Defendant further argues the arbitrator would have no right to disregard these rights of Defendant. (*Id.*)

As to the issue of arbitrability, this argument is without merit; although an arbitrator might later credit the position. At this juncture, the Union is not arguing that the work cannot be transferred but only that the CBA applies to the transferred work. This Management Clause does

not provide forceful evidence that the question of whether the CBA applies to employees moving to the Erlanger Facility is not within the substantive scope of the agreement.

The parties have agreed to a valid arbitration clause and the dispute at hand is within the substantive scope of the agreement. Therefore, the dispute is arbitrable.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Compel Arbitration (ECF No. 19) is **GRANTED**, Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 16) **is DENIED as MOOT**, and Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 22) is **DENIED**. Plaintiff's Complaint (ECF No. 19) is **DISMISSED with PREJUDICE**.

**IT IS SO ORDERED.**

12-2-2019
**DATE**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE